

Email: corrie@cjylaw.com

July 11, 2022

Judge Barbara J. Rothstein
United States Courthouse
700 Stewart St. Suite 16128
Seattle, WA 98101-9906

      Re:    *Amie Drammeh, et al. v. Uber Technologies, Inc. et al.*
             2:21-cv-00202-BJR
             Plaintiffs' Letter Brief re: McDonald Document & Confidential Designations

Dear Judge Rothstein:

Per the email from Anthony Kakoyannis, dated July 11, 2022, please consider this Plaintiffs' motion on the two issues we brought to the Court's attention by email on Saturday, July 9, 2022. As requested, below is the argument and evidence contained in those emails, while leaving out those portions of the emails that are not substantive argument.

McDonald Documents
Plaintiffs request that the Court order Uber to produce an unredacted copy of the 182-page "McDonald Document," or those portions of the document that contain facts and data related to material in the five unredacted pages Uber produced on July 7 (pp. UTI 78121-125). Uber's 30(b)(6) witness, Katherine McDonald, testified she reviewed and relied on the "McDonald document" to "refresh her memory" [102:19-24] on the subject of Uber's data on carjackings against Drivers in 2020.

The five unredacted pages confirm key points Uber has steadfastly denied: (1) a surge in carjackings against Uber Drivers began well before the "last quarter" of 2020, and (2) the guidance ("taxonomy") Uber provides its agents who fill out the incident report forms (JIRAs) was designed so as to seriously undercount the incidence of carjackings, obscuring from Uber's "data analytics" system the magnitude of the problem. This evidence goes to one of our major theories of liability against Uber.

Ms. McDonald testified this document "codified" an "analysis" done by the U.S. Safety Ops team, whom her data analytics team "partners" with "on a monthly basis" to look at incident data. [30:1-2]. She said her team saw a "trend" in January 2021 of increasing thefts against Uber Drivers, and then the U.S. Safety Ops team did a "manual ticket review" of the actual incident reports. She

testified she "believed" U.S. Safety Ops also "observed" a correlation between car thefts and payment method used. [113:8-19]

Ms. McDonald testified she could not remember such important specifics as the "rate increase" of car thefts she testified they saw in January 2021, the data used to calculate carjacking rate (*i.e.,* the actual number of carjackings they identified for each month going back "into 2019," and the number of trips or miles driven, used for the denominator), nor could she recall any "specifics" of the correlation U.S. Safety Ops "observed" between payment method used and carjackings. ***We believe such specifics have been redacted from the version of the document Uber produced to us***, as it seems implausible, given Ms. McDonald's testimony about the analysis done by U.S. Safety Ops as part of its monthly review, that only five pages of the 182-page document contain such facts and data.

Uber should not be allowed to pick and choose those pages of the document it wishes us to see, when redacted pages likely speak to the same issues and data and shed more light on what Uber knew and did not know at this crucial time.

Uber's Over-Designation of Documents as Confidential.
Uber has produced approximately 80,000 pages of documents in the course of discovery. More than 70,000 pages of these are Uber's 24,000 safety incident reports (called "JIRA tickets" or "JIRAs") involving physical assaults against Uber Drivers by Riders, 2017-December 13, 2020.

Uber has indiscriminately stamped "confidential" on nearly every one of these 80,000 pages. For example, it designated as "confidential" many pages from its publicly available website and apps, a Wikipedia page on "Enhanced 9-1-1" systems, and its Safety Reports (2019, 2022), which Uber released to major media outlets. In violation of Section 5.1 of the Protective Order, Uber has not "designated for protection *only those parts of … documents … that qualify*" for confidential treatment, but has simply stamped almost every single document "confidential." Plaintiffs have objected to such designations.

LCR 5(g) and this District's model Protective Order are based on the "strong presumption of public access to the Court's files." LCR 5(g). Consistent with that "strong presumption, Section 6.3 of the Protective Order places the onus on Uber to file a motion to retain confidentiality of documents to which the non-designating party objects. Yet Uber has no incentive to bring such a motion. Even though we timely objected to the confidentiality designations it has never sought an order approving of its tagging of the documents as "confidential." Now Uber has filed its summary judgment motion, relying on selected documents it previously tagged "confidential" --but not filing them under seal—because to do so would be burdensome and would block public access to its filings. When we pointed this out, Uber announced it was de-designating the documents it chose to file with its summary judgment motion, removing the confidentiality designation. Plaintiffs are now in the position of responding to the motion; because of Uber's blanket tagging of documents as confidential, we are forced to file our motion and supporting exhibits under seal. That means the considerable evidence we have amassed against Uber – its sweeping control

over its Drivers' work conditions, its knowledge of the risks, including carjacking risks, to its Drivers, and its failure to implement reasonable mitigation measures that would have saved Mr. Ceesay's life—must be sealed from public view (while Uber's filings are public) and we are put to the considerable hassle of filing all our papers under seal, and also filing redacted copies of the pleadings publicly, as required by LCR 5(g)(5).

We seek the Court's intervention before we have to file our opposition pleadings and evidence on July 22.

Specifically with respect to the JIRAs, we anticipate filing approximately 300 of the 24,000, along with tables and spreadsheets summarizing all of the JIRAs, pursuant to FRE 1006. Plaintiffs' position is that Uber should remove the confidentiality designation. Uber has already redacted the last names of Uber Drivers and Riders, despite the Court's January 13, 2022 order that such reports should be produced without redactions. (A point of disagreement with Uber: we absolutely did not agree or accede to Uber's unilateral decision to redact Driver and Rider names. We simply elected at the time to accept those reports with those redactions. Since that information has already been redacted, we believe there is no basis for claiming they are "confidential.") Uber's stance is that it will not de-designate the documents without considerable additional redactions, including of the last names of Uber's investigating agents and text they entered regarding the incidents. Even if such redactions were appropriate—and Uber has not identified a basis for such sweeping redactions as Section 4.3 of the P.O. requires—the process would take weeks or months.

Sincerely,

*[signature]*

Corrie J. Yackulic, WSBA No. 16063
110 Prefontaine Place South, Ste. 304
Seattle, WA 98104
Telephone (206) 787-1915
Email: corrie@cjylaw.com

WEINSTEIN CAGGIANO, PLLC

*/s/ Alexandra Caggiano*
Brain Weinstein, WSBA No. 24497
Alexandra Caggiano, WSBA No. 47862
601 Union Street, Suite 2420
Seattle, Washington 98101
Telephone: (206) 508-7070
Email: service@weinsteincaggiano.com

*Counsel for Plaintiffs*