HONORABLE BARBARA ROTHSTEIN

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| AMIE DRAMMEH, and YUSUPHA CEESAY, Individually, as Surviving Parents of CHERNO CEESAY; and MARAM CEESAY, Personal Representative of the Estate of CHERNO CEESAY;<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., a Delaware Corporation, RASIER LLC, and THE FIRST DOE THROUGH ONE HUNDREDTH DOE, INCLUSIVE;<br><br>Defendants. | Case No. 2:21-cv-00202-BJR<br><br>**UBER TECHNOLOGIES, INC. AND RASIER, LLC'S RESPONSE CONCERNING THE PRODUCTION OF THE MCDONALD DOCUMENT AND ISSUES REGARDING CONFIDENTIAL DESIGNATIONS** |

Uber Technologies, Inc. and Rasier, LLC submit the following response to Plaintiffs' "Motion" concerning the production of the "McDonald Document" and issues regarding confidential designations as follow:

**UBER TECHNOLOGIES, INC. AND RASIER, LLC'S SUBMISSION CONCERNING PRODUCTION OF MCDONALD DOCUMENTS AND CONFIDENTIAL DESIGNATIONS – 1**
Case No. 2:21-cv-00202-BJR

BUCHALTER
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 206.319.7052

I. **PRODUCTION OF THE "MCDONALD DOCUMENT"**

A. **INTRODUCTION**

The document at issue (which is a Power Point Presentation that Plaintiffs refer to as the "McDonald Document") was prepared at the direction of counsel in anticipation of litigation in 2021 (after the subject incident) and provided to counsel for their analysis in seeking legal advice. The Uber Defendants have always maintained that the McDonald Document is privileged and work product protected. The witness even testified that the document was prepared at the direction of counsel. Deposition Transcript of Katherine McDonald, 102:12-14.

However, last week Plaintiffs complained to the Court and demanded production because the witness looked at the data in the document to refresh her recollection regarding statistics related to vehicles being stolen.

As explained in greater detail below, the law requires Plaintiffs to establish a number of conditions before the document can be disclosed. However, to avoid the need to involve the Court last week, the Uber Defendants voluntarily agreed to provide those portions of the document Ms. McDonald reviewed to refresh her recollection (including all statistics related to vehicles being stolen) and redact the remainder of the document still protected from disclosure. That is what was done, but now Plaintiffs are demanding a wholesale disclosure of the entire privileged and protected document, which is inconsistent with the law.

B. **THE "MCDONALD DOCUMENT" WAS PROPERLY REDACTED TO LIMIT IT TO ONLY THE PAGES REVIEWED BY MS. MCDONALD**

The Uber Defendants submit that the 182-page document McDonald Document was produced with the proper redactions. Plaintiffs' claim is based on the assumption that Ms. McDonald reviewed the entire 182-page document to refresh her recollection and to prepare for her deposition. Plaintiffs are wrong. Ms. McDonald did not review the entire 182-page document to refresh her recollection and to prepare for her deposition. Rather, she only reviewed the pages

UBER TECHNOLOGIES, INC. AND RASIER, LLC'S SUBMISSION
CONCERNING PRODUCTION OF MCDONALD DOCUMENTS AND
CONFIDENTIAL DESIGNATIONS – 2
Case No. 2:21-cv-00202-BJR

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

that are Bates numbered UTI078121 to 125.  At her deposition, Ms. McDonald confirmed that she only reviewed the "data":

> 9    Q.   But, specifically, in preparation for your
> 10   deposition today or as you have thought about what you
> 11   looked at back then, have you looked again at that data
> 12   from December 2020 that you looked at in January or
> 13   February 2021, or, recently, have you looked at it?
> 14   A.   Specifically at the data at that time?  I -- yes,
> 15   in preparation for the deposition.
> 16   Q.   Okay.  And what did you look at?
> 17   A.   Specifically the rate of that vehicle stolen over
> 18   time, the analysis that we were reviewing at the time in
> 19   late Jan, early Feb.

Deposition Transcript of Katherine McDonald, 101:9-19. The "data" referenced is on Bates number UTI078123 and was unredacted for Plaintiffs to review. As a precaution, prior to redacting the document, and also prior to producing the McDonald Document to Plaintiffs, we confirmed with Ms. McDonald that she only reviewed the pages that are Bates numbered UTI078121 to 125. Accordingly, Plaintiffs' claim that Ms. McDonald reviewed the entire document to refresh her recollection is completely inaccurate.

Because Ms. McDonald did not review all the pages of the document to refresh her recollection or for the purpose of testifying, there is no basis for Plaintiffs' demand that the entire document should be produced unredacted. Although the Ninth Circuit has not address this issue, the Third Circuit has set forth the following three conditions for producing a document under Federal Rules of Evidence 612: "1) the witness must use the writing to refresh his memory; 2) the witness must use the writing for the purpose of testifying; and 3) the court must determine that

UBER TECHNOLOGIES, INC. AND RASIER, LLC'S SUBMISSION
CONCERNING PRODUCTION OF MCDONALD DOCUMENTS AND
CONFIDENTIAL DESIGNATIONS – 3
Case No. 2:21-cv-00202-BJR

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

production is necessary in the interests of justice." *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985). The Court explained the need for these three conditions as follows:

> The first requirement is consistent with the purposes of the rule, for if the witness is not using the document to refresh his memory, that document has no relevance to any attempt to test the credibility and memory of the witness. *See, e.g., United States v. Wright*, 489 F.2d 1181, 1188–89 (D.C.Cir.1973) (party must lay foundation for document production request by establishing first that witness used document prior to testifying to refresh his memory).
>
> The second requirement—that the witness use the document for the purpose of testifying—was designed "to safeguard against using the rule as a pretext for wholesale exploration of an opposing party's files and to insure that access is limited only to those writings which may fairly be said in part to have an impact upon the testimony of the witness." Fed.R.Evid. 612 advisory committee note. As with the first requirement, the second requirement recognizes that the document is of little utility for impeachment and cross-examination without a showing that the document actually influenced the witness' testimony. *See, e.g., Mongeau v. Kurz*, C.A. No. 83–4054 (E.D.Pa. April 2, 1984). Finally, the third requirement codifies the Supreme Court's holding in *Goldman v. United States*, 316 U.S. 129, 132, 62 S.Ct. 993, 994, 86 L.Ed. 1322 (1942), that even though a witness may review notes prior to testifying, a trial court should exercise discretion to guard against "fishing expeditions among a multitude of papers which a witness may have used in preparing for trial." H.R.Rep. No. 93–650, 93d Cong., 1st Sess. (1973).

*Sporck v. Peil*, 759 F.2d at 317.

Here, the pages outside of those Bates numbered UTI078121 to 125 were never reviewed by Ms. McDonald prior to her deposition. Consequently, the first two conditions have not been met. As a result, the redacted portions of the McDonald Document have no relevance here and there is no basis for Plaintiffs to cross-examine Ms. McDonald concerning information she did not review. Finally, the interest of justice would not be served here because disclosure of the redacted portion would disclosed privileged communications and would be a fishing expedition of the Uber Defendants' files.

Consistent with these guidelines, other addressing this issue have confirm that where a witness has reviewed only a portion of a file, only that portion needs to be disclosed. *United States*

UBER TECHNOLOGIES, INC. AND RASIER, LLC'S SUBMISSION CONCERNING PRODUCTION OF MCDONALD DOCUMENTS AND CONFIDENTIAL DESIGNATIONS – 4
Case No. 2:21-cv-00202-BJR

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

*v. Larranaga*, 787 F.2d 489, 501 (10th Cir. 1986) (collecting authorities); *United States v. Wright*, 489 F.2d 1181, 1189 (D.C. Cir. 1973) ("Even if Reeves used the report to refresh his recollection only those parts of the report relating to his testimony on direct need have been turned over to the Government."); *S & A Painting Co. v. O.W.B. Corp.*, 103 F.R.D. 407, 410 (W.D. Pa. 1984) (holding that where a witness uses only part of a document to refresh her recollection, the other parts remain protected against disclosure *even if they contain relevant information or material)*. This rule protects against "the unfairness which would result from broad disclosure merely because other parts of the writing, not used to refresh recollection, may" be relevant to the witness's testimony. *Id.* Consequently, there is no basis for Plaintiffs to demand the production of the entire McDonald Document unredacted.

      **C.    INDEPENDENTLY, THE SLIDES WERE PROPERLY REDACTED AS BEING PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE**

In addition, the remainder of the McDonald Document is protected by the attorney-client privilege and work production doctrine. RCW 5.60.060(2)(a), which lays out Washington's attorney-client privilege, states "An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment." Part of the purpose of presenting the McDonald Document was to discern the legal ramifications of potential courses of action from members of Uber's legal department. Specifically, input from the legal director was sought for responding to these incidents and considering the legal impact of certain projects. Accordingly, Scott Binnings, a licensed attorney in the Safety Legal team was involving in numerous emails and meetings with the group as they working on the projects referenced in the document. Moreover, the McDonald Document was created at the instruction of the legal director. Such documents or the compilation of materials prepared by agents of the attorney in preparation for litigation is protected by the work product doctrine. *U.S. v. Richey*, 632 F.3d 559,

UBER TECHNOLOGIES, INC. AND RASIER, LLC'S SUBMISSION CONCERNING PRODUCTION OF MCDONALD DOCUMENTS AND CONFIDENTIAL DESIGNATIONS – 5
Case No. 2:21-cv-00202-BJR

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

567 (9th Cir. 2011); *see also, Admiral Ins. Co. v. U. S. Dist. Court for the Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)).

The fact that the McDonald Document is protected by the attorney-client privilege and work product doctrine is confirmed by the "A/C Privileged & Confidential" label stamped on the majority of the pages in the document. Moreover, the document itself confirms the involvement of the Legal department in this process of analyzing these incidents and preparing responses with input from the Legal department:

- In the overview of the various projects, the document confirms that collaboration and updates would involve the "Safety Legal" team (Page 13);
- That the participants needed to understand "Legal/marketplace impact" or "legal impact" (Page 118);
- That "legal and business approval" was needed (Page 131);
- That "legal and others approval" was needed for certain programs (Pages 148 and 153);
- That "Legal flagged concerns" about other programs (Page 148);
- That the participants were still waiting for "legal to provide NDA draft" for a program (Pages 150 and 155);
- That one of the participants was "confirming with Legal the ability" to perform a particular task (Page 153);
- That some programs were "gather[ing] legal approvals" (Page 158);
- That one of the participants was "to work with legal to provide NDA draft by end of the week (Page 160);
- That "Legal approved" a particular program (Page 165);
- That "Legal to provide NDA draft by the end of the week" (Page 165);
- Outlines the legal department's role as to various types of safety incidents (Page 172);
- For one particular program, the document confirms the identify of the in-house counsel to be involved, Erin Novak (Page 176);
- That the participants were "[w]orking with legal" on a particular program (Page 177); and
- That for a particular program, they were still seeking input on the "Legal implications" (Page 177).

Because the McDonald Document is protected by the attorney-client privilege and work product doctrine, the pages not reviewed by Ms. McDonald for her deposition was properly redacted.

### D.  PLAINTIFFS ATTEMPT TO MISLEAD THIS COURT BY CLAIMING THAT THE "MCDONALD DOCUMENT" SHOULD HAVE BEEN PRODUCED MONTHS AGO IN RESPONSE TO RFP NO. 38

Plaintiffs claim that the McDonald Documents should have been produced months ago

UBER TECHNOLOGIES, INC. AND RASIER, LLC'S SUBMISSION
CONCERNING PRODUCTION OF MCDONALD DOCUMENTS AND
CONFIDENTIAL DESIGNATIONS – 6
Case No. 2:21-cv-00202-BJR

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

pursuant to RFP No. 38. This argument is misleading. What Plaintiffs fail to advise this Court is that from the onset, the Uber Defendants objected to RFP No. 39 on numerous grounds. Thereafter, the parties met and confer regarding the scope of the Plaintiffs' First Set of Requests for Production of Documents in September 2021 which resulted in Plaintiffs agreeing to **withdrawal** RFP No. 38. The parties' meet and confer communications were documented in the chart which includes Ms. Yackulic's redlined edits.[1] Specifically as to RFP No. 38, the agreement was as follows:

| **REQUEST FOR PRODUCTION NO. 38:** All **DOCUMENTS** regarding **YOUR** response(s) or investigation(s) into reports of attacks on **UBER DRIVERS**. | Plaintiffs agree to withdraw this request for now. | Thank you. |
|---|---|---|

Accordingly, Plaintiffs' claim that the McDonald Document should have been produced months ago in response to RFP No. 38 is completely erroneous and misleading.

Since September 2021, Plaintiffs have not met and conferred with the Uber Defendants to request that they are not seeking documents responsive to RFP No. 38. The first time they did this was in their email of July 11, 2022, after discovery has closed.

It is further misleading for Plaintiffs to argue that the Uber Defendants should have identified this document in a privilege log when RFP No. 38 was withdrawn.

## II. INCIDENT REPORTS DESIGNATED AS "CONFIDENTIAL"

### A. INTRODUCTION

On July 6, 2022, Plaintiffs sent an email asking to meet and confer with the potential filing of documents marked as confidential. In their email, Plaintiffs provided little specificity as to the documents that are the subject of the meet and confer. Instead, the email listed a number of general categories with the incident reports consisting of 70,000 + pages and other categories that consist of hundreds, if not thousands of pages of documents. The parties exchanged a number of emails

---

[1] A copy of the chart was submitted to the Court via electronic mail on July 11, 2022.

UBER TECHNOLOGIES, INC. AND RASIER, LLC'S SUBMISSION
CONCERNING PRODUCTION OF MCDONALD DOCUMENTS AND
CONFIDENTIAL DESIGNATIONS – 7
Case No. 2:21-cv-00202-BJR

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

concerning this issue with the Uber Defendants asking for more specificity as to the documents that are at issue so that they can properly meet and confer about the issue and suggesting that the parties consider other options such as redaction or a stipulated motion to seal to resolve the dispute.

Eventually, the parties did meet and confer on Friday, July 8, 2022 concerning the incident reports. At the conference, the Uber Defendants suggested redacting some parts of the documents as a means of allowing Plaintiffs to file the incident reports which they believe are relevant to their opposition. **Plaintiffs rejected this idea and claimed that they intend to upload all 70,000+ pages of reports to the ECF system for the Court to review as part of their opposition papers**. Thus, Plaintiffs refused to consider any other alternative and simply demanded that the Uber Defendants de-designate all 70,000+ pages of incident reports as "confidential."

For the first time in their submission to the Court on July 11, 2022, despite supposedly meeting and conferring with the Uber Defendants in good faith, Plaintiffs claim they only plan to submit 300 reports. The process of redacting 300 reports can be done efficiently. And thus, the Uber Defendants suggest that the parties meet and confer further concerning the redaction of these 300 reports.

### B.    THE INCIDENT REPORTS WERE PROPERLY DESIGNATED AS CONFIDENTIAL

It is Uber's position that these incident reports were properly designated as "Confidential" and should maintain their confidential designations for the following four reasons:

*First*, the incident reports contain proprietary and confidential commercial information, disclosure of which would result in harm to Uber's business. As Plaintiffs' are certainly aware, these incident reports are internal reports created by Uber's employees and independent contractors to collect, classify, and evaluate—among other things—reports sent to Uber from independent drivers, riders, and third parties.

UBER TECHNOLOGIES, INC. AND RASIER, LLC'S SUBMISSION CONCERNING PRODUCTION OF MCDONALD DOCUMENTS AND CONFIDENTIAL DESIGNATIONS – 8
Case No. 2:21-cv-00202-BJR

BUCHALTER
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 206.319.7052

These incident reports contain the type of information Uber collects, the process for collection and evaluation of such information, the software and systems used, and the process for responding to individuals. These materials and processes are the product of years of research and development and dissemination to competitors or the public at large would be devastating to Uber's business. In many cases, the incident reports contain proprietary information regarding how such matters are classified, how such classifications might be modified or audited, and Uber's decision making process in classifying incidents. This taxonomy was developed over the course of many years in connection with many consultants and experts, is the subject of significant labor and expense. These incident reports also contain details regarding Uber's business policies and decision making processes in complying with state and local regulations, and evaluating rider and driver's compliance with their contractual obligations. In some cases, these incident reports also contain information regarding insurance coverage and Uber's policies for monitoring insurance claims.

These documents, especially viewed as a whole, are the product of years of research and development. These documents, if disseminated to Uber's competitors, could provide an unfair competitive advantage. In the ever-evolving world of technology platforms, the slightest competitive advantage has the potential to shift market share drastically. The harmful effect that dissemination of these materials could have on Uber's publicly traded business cannot be overstated. Uber has produced tens of thousands of pages of these incident reports to Plaintiffs. Uber now merely requests that Plaintiffs agree to use the materials only for the purpose of this litigation and protect the materials from dissemination to third parties, including Uber's competitors. In doing so, Uber does not seek to limit or impede Plaintiffs' ability to prosecute this action and merely seeks to protect its commercially sensitive information.

*Second*, the incident reports contain the personally identifying information of Uber's employees and independent contractors. Indeed, these incident reports—at Plaintiffs' request—

UBER TECHNOLOGIES, INC. AND RASIER, LLC'S SUBMISSION
CONCERNING PRODUCTION OF MCDONALD DOCUMENTS AND
CONFIDENTIAL DESIGNATIONS – 9
Case No. 2:21-cv-00202-BJR

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

were produced without redacting the full names, email address, and personal cell phone numbers of Uber's employees and independent contractors who respond to and evaluate these incident reports. These individuals should not have their information publicly disseminated.

Moreover, the responsive incident reports contain highly sensitive and personal information regarding alleged assaults and threats of assaults. In many cases, these documents contain highly personal details regarding something that happened to a third party entirely unrelated to this action. That third party may have reported the incident to Uber with the understanding that it would not be publicly disclosed. Uber understands that these incident reports may be responsive to discovery in this case, but has produced these documents subject to the Protective Order in order to respect the rights of these third parties who may not want the details of potentially traumatic events to be disseminated publicly.

**Third**, Plaintiffs previously admitted that these incident reports were protected by the Protective Order. Indeed, in Plaintiffs' meet and confer letter on February 8, 2022, you justified your request that certain redactions be removed from the reports because the documents were subject to the Protective Order. And during the January 13, 2022 conference, the Court expressed that foregoing redactions of the names and information of Uber employees was acceptable because of the Protective Order.

Following the February 8, 2022 letter, Uber relied on Plaintiffs' position that these records were confidential under the Protective Order when producing records without redacting the personally identifying information of its employees. Plaintiffs cannot now bring this challenge and argue the that they should be able to disseminate to third parties records containing the full names, email addresses, and personal phone numbers of its employees when they expressly represented to Uber that they were subject to the Protective Order.

**Fourth**, these incident reports contain the type of materials that were expressly contemplated as confidential under the terms of the Protective Order. Indeed, as described in detail

UBER TECHNOLOGIES, INC. AND RASIER, LLC'S SUBMISSION
CONCERNING PRODUCTION OF MCDONALD DOCUMENTS AND
CONFIDENTIAL DESIGNATIONS – 10
Case No. 2:21-cv-00202-BJR

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

above, these documents contain information related to Uber's "business", "operations", "proprietary technology, applications, software, research, and/or data", "proprietary terms and systems, including but not limited to all electronically stored data and information regarding its digital application platforms and any data or information derived therefrom", "insurance program", "the use of the Uber applications or platforms by any non-party", "safety incidents involving the Uber applications or platforms and any non-party", "any safety-related policy or procedure and any decisions or deliberations relating thereto", and "Personally identifiable information of any current or former employee of a party". As these incident reports contain the precise type of information this Court has already ordered is appropriately treated as confidential, Uber views Plaintiffs' challenge to the confidentiality designations as unfounded.

DATED: July 11, 2022

BUCHALTER
A Professional Corporation

By: */s/ Marissa Alkhazov*
Gary A. Wolensky, WSBA #54454
Marissa Alkhazov, WSBA #34278
Brandon Q. Tran, Admitted Pro Hac Vice
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 206.319.7052
Email: gwolensky@buchalter.com
Email: bthoreson@buchalter.com
Email: btran@buchalter.com

*Attorneys for Defendants Uber Technologies, Inc. and Rasier, LLC*

UBER TECHNOLOGIES, INC. AND RASIER, LLC'S SUBMISSION CONCERNING PRODUCTION OF MCDONALD DOCUMENTS AND CONFIDENTIAL DESIGNATIONS – 11
Case No. 2:21-cv-00202-BJR

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

# CERTIFICATE OF SERVICE

☑  **ELECTRONICALLY** I hereby certify that on July 1 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Alexandra B. Caggiano<br>Brian Weinstein<br>Dylan J. Johnson<br>WEINSTEIN CAGGIANO PLLC<br>600 University Street, Suite 1620<br>Seattle, WA 98101 | *Attorneys for Plaintiffs*<br>*Amie Drammeh, Cherno Ceesay's mother;*<br>*Yusupha Ceesay, Cherno Ceesay's Father:*<br>*and Maram Ceesay, as personal*<br>*representative of the Estate of her brother*<br>*Cherno Ceesay*<br><br>Tel: 206-508-7070<br>Fax: 206-237-8650<br><br>Email: service@weinsteincaggiano.com<br>alex@weinsteincaggiano.com<br>brian@weinsteincaggiano.com<br>dylan@weinsteincaggiano.com<br>service@weinsteincaggiano.com |
| Corrie J. Yackulic<br>Larken Yackulic<br>CORRIE YACKULIC LAW FIRM PLLC<br>110 Prefontaine Pl S Suite 304<br>Seattle, WA 98104 | *Attorneys for Plaintiffs*<br>*Amie Drammeh, Cherno Ceesay's mother;*<br>*Yusupha Ceesay, Cherno Ceesay's Father:*<br>*and Maram Ceesay, as personal*<br>*representative of the Estate of her brother*<br>*Cherno Ceesay*<br><br>Tel: 206-787-1915<br>Email: corrie@cjylaw.com;<br>clerk@cjylaw.com;<br>Audrey@cjylaw.com<br>Patricia@cjylaw.com (Paralegal) |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Kathie Craig – *kcraig@buchalter.com*

*Kathie Craig*
(Signature)

CERTIFICATE OF SERVICE – 1
Case No. 2:21-cv-00202-BJR

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052