The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMIE DRAMMEH and YUSUPHA CEESAY, Individually, as Surviving Parents of CHERNO CEESAY; and MARAM CEESAY, Personal Representative of the Estate of CHERNO CEESAY,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., a Delaware Corporation, RASIER LLC, and the first doe through one hundredth doe, inclusive,<br><br>Defendants. | No. 2:21-202 BJR<br><br>DECLARATION OF ANNMARIE CORRIGAN IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT |

ANNMARIE CORRIGAN declares as follows:

1. I am an adult and am competent to testify. I have worked for over 15 years in Governance, Risk, and Controls ("GRC") compliance in the Payments Industry. A true and correct copy of my curriculum vitae is attached hereto. I was retained by the Plaintiffs in this case to look at the payment method used for the "Stephanie Tylor" Uber account created at 8:50 p.m. on December 13, 2020, and the transactions between the "Stephanie Tylor" account holder and Uber that night. I adapted standard risk review and investigation techniques to (a) make a

DECLARATION OF ANNMARIE CORRIGAN
PAGE- 1

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

1  determination about what happened from a payments perspective, and (b) identify gaps and risks in Uber's payment method verification system. The opinions I express here and that I have previously expressed in this case are to a reasonable degree of certainty.

2. In a GRC review, a company's internal policies, procedures and processes are identified. For this case I relied on the Issaquah police report, Uber's discovery responses, including Uber's Second Supplemental Responses to Plaintiffs' Fifth Set of Interrogatories, Discovery, and certain documents from Uber. These include an April 9, 2021 blogpost announcing a "New Rider Verification Feature to Enhance Safety on the Road," and a 182-page document titled "▇▇▇▇▇▇▇▇▇▇▇▇▇▇," (UTI 78327-78513), which I received on July 16, 2022.

3. The following background facts were pertinent to my analysis:

According to the Issaquah police report, at 8:50 p.m. on December 13, 2020, a person using the name "Stephanie Tylor" opened an Uber account. Thirteen minutes later, at 9:03 p.m., this person ordered a ride, with the intent of carjacking the driver. The car arrived at the pickup location, on a rural road in Issaquah, Washington, approximately 11 minutes later. Shortly after that, Mr. Ceesay was stabbed to death. Olivia Bebic and Devon Wade were subsequently arrested and charged with the murder of Mr. Ceesay. The Stephanie Tylor account was created on Mr. Wade's cell phone.

The police noted, "the name Stephanie Tylor does not appear to exist in Washington and appears to be made up for the purposes of hiding the actual identity of the individual creating this account." (UTI 145) The police report refers to the payment instrument as a "Visa Metabank credit card ■■■lxx-XXXX-0908 with an expiration date [redacted] of zip code of 98006." [UTI

DECLARATION OF ANNMARIE CORRIGAN
PAGE- 2

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

74] Based on my experience, I know MetaBank does not have a credit card issuing program but does have a gift card/prepaid program. The police report refers to an internet search for a "Walmart Visa gift card" (UTI 103) on Ms. Bebic's phone. The use of a prepaid card was confirmed when Uber provided the card BIN number.

4. Gift cards are purchased for a set amount and used for point of sale purchases. While it is possible to "register" gift cards, registering the card does not confirm the identity of the person with the card; a person can register a gift card using a fake name and address.

5. Before April 9, 2021, Uber did not have any system in place to verify the identity of a customer using an anonymous form of payment, such as gift cards or prepaid cards. While Uber had certain internal *fraud* detection tools, these were in place to prevent financial fraud *against Uber*—not to protect Uber drivers from criminal acts by customers accessing the Uber platform anonymously. Such internal fraud detection tools included "Mastermind," developed by Uber, which gave it the ability to look for accounts with confirmed fraud indicators based on items such as name, email address, signup IP address, etc., or that showed suspicious behavior or bots.

Uber itself stated in Interrogatory answers: "As of December 2020 in the United States, Uber did not require identification documentation for riders at the time of sign-up." Likewise, the " ▮▮▮▮▮▮▮▮▮▮ " document notes, on a page titled " ▮▮▮▮▮▮▮▮

DECLARATION OF ANNMARIE CORRIGAN
PAGE- 3

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ persons intending harm, such as Bebic and Wade, were able to open an Uber account using a fake name and anonymous form of payment and to gain access to an Uber ride completely anonymously.

6. Anti-money laundering professionals and law enforcement personnel involved in tracking financial fraud have known for years that prepaid/gift cards and other anonymous forms of payment are the payment method of choice of criminal elements, including (for example) those involved in human trafficking and drug trafficking. Uber should not have accepted anonymous payment methods without requiring **at a very minimum** either a positive match of the rider to the payment instrument or independent validation of the rider's identity. Non-reloadable "gift cards" should not have been allowed without a government-issued identification, as even a gift card registration is not a verification of identity.

7. Uber itself is aware of this. As it stated in the April 9, 2021 blogpost referenced above,

> we know from law enforcement and other experts that anonymous payment methods are more often linked to malicious actions or fraud which can put drivers at risk.
>
> . . . .
>
> Starting today, we're strengthening our rider verification process and putting more safeguards in place to validate the identity of riders who use these types of payments. This new feature requires riders who try to set-up a new account with a prepaid card, gift cards or Venmo to upload a valid ID, such as a driver's license or passport. The ID then undergoes a series of validity checks. These additional verification requirements can act as a deterrent to those who are trying to use the app to cause harm.

8. Uber should have had this ID verification requirement in place long before April 2021, and certainly before December 2020.

9. In short, Uber did not have sufficient controls in place to prevent misuse of its platform by criminal elements; Uber allowed users to use an anonymous payment method

DECLARATION OF ANNMARIE CORRIGAN
PAGE- 4

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

without any ID verification. Had controls been in place, "Stephanie Tylor" would not have been able to get on the Uber platform.

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct. Executed this 26 day of July, 2022 in Cleveland, Ohio.

*[signature]*
ANNMARIE CORRIGAN

DECLARATION OF ANNMARIE CORRIGAN
PAGE- 5

CORRIE YACKULIC LAW FIRM, PLLC
110 PREFONTAINE PLACE SOUTH, SUITE 304
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 787-1915 • FACSIMILE: (206) 299-9725

# EXHIBIT 1

# ANNMARIE CORRIGAN
(440) 360-0825 | amccma@live.com
9714 Tuttle Rd., Olmsted Twp., OH  44138

SUMMARY OF QUALIFICATIONS

Results-driven and highly qualified Compliance professional with over a decade experience in Financial Services Industry. Adept at communicating to internal and external partners. Currently seeking a position which will effectively utilize acquired skills, abilities, and areas of expertise as follows:

- Contract Review
- Client Relationships
- Business Requirements
- Process Improvement
- Card Brand/NACHA Rules
- Risk Assessment
- Data Analysis
- Portfolio Management
- Collaboration
- Strategy
- Third Party
- Problem solving

CAREER OVERVIEW

**Castlerea, LLC., Olmsted Twp, OH**  **current**
Consulting in Payments and Compliance. Currently auditing an Agile Management course

**Digital River, Inc., Minnetonka, MN**  June 2018 – Sept 2019
*Compliance Architect*
Primary duty: Drafted AML and Risk policies in collaboration with multiple departments; provided risk framework guidance to become a Payment Facilitator. E-Commerce MOR/SOR.
- Governance Risk Assessment; 6 Pillars framework; final report to leadership and holding company
- Oversaw the coordination of business bank site visit (audit)
- Exposed to PCI DSS, SOC 1&2, GDPR, CCPA, 3D-Secure

**First Data Corporation, Hagerstown, MD**  Sept 2014 – Jan 2018
*Director, Payment Relations*
Primary duty 2016-17: Revamped and administered Enterprise wide ACH Risk Assessment and Audit, providing aggregated reporting to senior management. Remediated internal audit findings and was successfully audited by FFIEC.   NACHA relationship.
Primary duty 2014-16:  Managed POS ISO/TPP portfolio for enterprise risk. Standardized approach to managing portfolio for Compliance and reporting to Clearing Bank and Card Brands. Worked with Credit to approve new ISO clients. SME/ensured client compliance with Card Brand/Network rules.
- On NACHA's API Standardization Industry Group, creating Agile user stories
- Reviewed new business initiatives to ensure compliance with NACHA and Network Rules
- Business requirements drafted for reporting changes; Waterfall environment
- Managed ISO complaints process to over 50% reduction; revamped portfolio reporting
- Successfully lobbied a rule change to PCI to support EMV; company remediation savings ~$25MM.
- Revamped quarterly reporting to card brands
- Business process change to save over $700K in MasterCard Data Integrity fines.
- Exposed to ISO22000, NIST

**First Data Corporation, Hagerstown, MD**  June 2012 – Sept 2014
*Security Program Manager, Enterprise Security, Risk & Compliance*
Primary duty:  Performed site visits of Third Parties with First Data encryption keys to ensure the physical and logical required by PCI PIN and ASC X9 guidelines are met. Reviewed annual Third Party Assessments to ensure entities were compliant with the PIN security requirements.  Determined size and scope of findings and assess the related risk to First Data; tracked remediation.
- Mentored new SMEs and Program Administrators and advised internal partners (Product, Legal and Internal Audit) on PIN requirements.
- CMMI framework for process improvement processes and procedures standardization
- Built out Risk Ranking methodology aligned with ISO27001 standard.

**First Data Corporation, North Olmsted, OH**  May 2005 – June 2012
*Compliance Manager, Contract Administration and Sponsorship*
Primary duty:  Ensured First Data Financial Institution and ATM ISO clients meet regulatory and network requirements including: review of state laws, annual due diligence reviews, annual FFIEC reports, quarterly OFAC checks, quarterly terminal reporting, and compliance with the ATM Operator agreement requirement by Visa and MasterCard. Underwrite/review of new ISOs.  Ensured compliance with Network rules.
- CTGA certified to perform PIN Security reviews.  Onsite reviews of high risk ISOs.

- Projects: financial analysis of sponsorship relationship, quarterly reporting review, and MasterCard PIN Security (precursor to PCI PIN SAQ) questionnaire for 1,800 FI customers.

EDUCATION

**The Ohio State University |** B.A. in English, Minor in Economics