**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 30 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AMIE DRAMMEH; et al., | No.    22-36038 |
| Plaintiffs-Appellants, | D.C. No. 2:21-cv-00202-BJR |
| v. | |
| UBER TECHNOLOGIES, INC., a Delaware corporation; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Western District of Washington
Barbara Jacobs Rothstein, District Judge, Presiding

Argued and Submitted March 26, 2024
Submission Withdrawn June 24, 2024
Resubmitted August 30, 2024
San Francisco, California

Before:  PAEZ, NGUYEN, and BUMATAY, Circuit Judges.
Dissent by Judge BUMATAY

Cherno Ceesay ("Ceesay"), an Uber driver, was murdered by two Uber

riders in a failed carjacking attempt in December 2020.  His estate, Amie

Drammeh et al. ("Drammeh"), sued Uber Technologies, Inc. ("Uber"), for

---

        *        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

negligence and wrongful death.  Drammeh now appeals the district court's order
granting summary judgment to Uber.  We have jurisdiction pursuant to 28 U.S.C.
§ 1291.  We review de novo a district court's grant of a motion for summary
judgment.  *See A.T. Kearney, Inc. v. Int'l Bus. Machines Corp.*, 73 F.3d 238, 240
(9th Cir. 1995).  We also review de novo a district court's determination of state
law.  *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).

In granting summary judgment to Uber, the district court concluded that
Uber did not owe a duty of care to Ceesay.  In Washington, "[t]he existence of
duty is a threshold question of law decided by the court," *Lauritzen v. Lauritzen*,
74 Wash.App. 432, 438 (1994), and determining "whether a duty to protect against
third party criminal conduct is owed at all" hinges on whether the harms were
legally foreseeable, *McKown v. Simon Prop. Grp., Inc.*, 182 Wash.2d 752, 764
(2015).  The district court concluded that no special relationship existed between
Uber and Ceesay giving rise to a duty of care, and regardless, that the specific
harms were not legally foreseeable to Uber.  We disagree with both conclusions,
and we reverse and remand for further proceedings.

**1.  *Special Relationship.***  The district court erred in concluding that Uber
did not have a special relationship with Ceesay and thus did not owe him a duty of
care.  In a prior order, we certified the question of whether Uber owed Ceesay a
duty of care to the Washington Supreme Court.  *See Drammeh v. Uber Tech., Inc.*,

105 F.4th 1138, 1140 (9th Cir. 2024).  The court declined our request for

certification.  We therefore must "predict as best we can what the [Washington]

Supreme Court would do in these circumstances."  *Marin Tug & Barge, Inc. v.*

*Westport Petroleum, Inc.*, 271 F.3d 825, 830 (9th Cir. 2001) (citation omitted).

We conclude that, under Washington law, a rideshare company owes a duty to its

drivers to use reasonable care in matching them with riders.

      In general, there exists "no duty [in tort law] to control the conduct of a third

person as to prevent him from causing physical harm to another. . . ."  Restatement

(Second) of Torts § 315 (1965).  One exception to the general rule is if "a special

relation exists between the actor and the other which gives the other a right to

protection."  *Id.* at § 315(b).  Washington law recognizes a number of protective

special relationships, including between schools and their students, innkeepers and

their guests, group homes for disabled individuals and their residents, businesses

and their invitees, employers and their employees, and general contractors and

subcontractors.  *See H.B.H. v. State*, 192 Wash.2d 154, 169 (2018) (discussing the

special relationships Washington recognizes).

      When deciding whether to extend the special relationship exception, the

Washington Supreme Court has looked to whether the relationship in question is

analogous to any of the relationships currently recognized under Washington law.

*See, e.g.*, *Niece v. Elmview Grp. Home*, 131 Wash.2d 39, 44–45 (1997).  But mere

analogy to an existing relationship is not always enough to recognize a new special relationship. *See, e.g.*, *Turner v. Wash. State Dep't of Soc. & Health Servs.*, 198 Wash.2d 273, 285–88 (2021) (declining to find a special relationship between recipients of the state's long-term care services and the state's Department of Social & Health Services).

The court has clarified that the inquiry into whether a special relationship exists is less about simple analogy to an existing relationship and is instead more about "vulnerability and entrustment." *H.B.H.*, 192 Wash.2d at 172–73. The court has further explained that a special relationship does not necessarily require "physical custody." *Id.* at 170. Rather, a special relationship under Washington law requires the "traits of dependence and control." *Barlow v. State*, 2 Wash.3d 583, 593 (2024).

Predicting what the Washington Supreme Court would do, we conclude that the court would recognize a special relationship between rideshare companies and their drivers, such that rideshare companies owe a duty to use reasonable care in pairing their drivers with riders.[1] Significantly, while all parties agree that this

---

[1] The dissent relies on a "recent Washington state law that 'preempts the field of regulating transportation network companies'" to conclude that we should have "left this in the hands of the Washington Legislature." Dissent at 1 (citing Wash. Rev. Code § 46.72B.190(1)). This law, however, has no effect on tort liability; rather, it prohibits counties, cities, and municipalities in the state of Washington from imposing "any tax, fee, or other charge, on a transportation network company

case does not involve an employer-employee relationship, the relationship between a rideshare company and its drivers is closely analogous to the relationship between employer and employee and the relationship between contractor and subcontractor. *See, e.g.*, *Vargas v. Inland Wash., LLC*, 194 Wash.2d 720, 731 (2019) (holding that when a general contractor "retains control over some part of the work," they have "a duty, within the scope of that control, to provide a safe place of work").

But we do not rely on mere analogy. Drammeh, in opposing Uber's summary judgment motion, presented sufficient undisputed evidence for us to conclude that Uber maintained a requisite level of control in matching drivers with riders, such that Ceesay entrusted and was dependent upon Uber for his safety. Drammeh pointed to Uber's "exclusive control over all aspects of the 'digital interface' between Drivers, Riders, and Uber." Uber alone controlled the verification methods of drivers and riders, what information to make available to each respective party, and consistently represented to drivers that it took their safety into consideration.

Ceesay relied entirely on Uber to match him with riders, and he was not given any meaningful information about the rider other than their location. The

---

or driver." Wash. Rev. Code § 46.72B.190(1). We thus fail to see its relevance here.

dissent points out that Ceesay could have simply rejected the ride, Dissent at 3, but this suggestion ignores the incentive structure created by ridesharing companies. Ceesay was driving as a means of making money, and in order to make money, he needed to accept riders. Uber did not disclose to Ceesay—nor give him any opportunity to discover—which riders had suspicious profiles or were using anonymous forms of payment. Under the dissent's logic, then, Ceesay would need to reject every ride—effectively quitting his job—in order to ensure his own safety. In this way, Ceesay rationally entrusted Uber to use reasonable care in accounting for his safety when Uber matched him with riders. The relationship thus possessed the "traits of dependence and control." *Barlow*, 2 Wash.3d at 593.

The district court erred in concluding that Uber owed no duty to Ceesay. Under Washington law, rideshare companies have a special relationship with their drivers, such that they owe the drivers a duty to use reasonable care when matching them with potential riders.

**2.  *Foreseeability.*** The district court also erred in concluding that Ceesay's murder was not legally foreseeable. Under Washington law, foreseeability can be both a question of law and a question of fact.[2] *See McKown*, 182 Wash.2d at 762,

---

[2] Here, we are focused only on legal foreseeability, which is part of the duty inquiry and a question of law for the court. *McKown*, 182 Wash.2d at 764. Factual foreseeability, which is normally part of the causation inquiry, is a question for the jury and asks "if a reasonable person in the defendant's position would be aware of a general field of danger posing a risk to one such as the plaintiff."

764.  Legal foreseeability asks whether the defendant "had notice of criminal activity sufficient to give rise to a duty"—in other words, whether "*the specific acts* in question were foreseeable." *McKown*, 182 Wash.2d at 764, 767.  Given the special relationship between rideshare companies and drivers, Uber owed Ceesay a duty of care when matching him with riders.  With this duty in mind, we next ask whether the harms suffered by Ceesay were legally foreseeable, such that the duty would exist in this scenario.  *See Niece*, 131 Wash.2d at 50.  When an underlying duty of care exists, "[i]ntentional or criminal conduct may be [legally] foreseeable unless it is 'so highly extraordinary or improbable as to be wholly beyond the range of expectability.'"  *Id.* (quoting *Johnson v. State*, 77 Wash.App. 934, 942 (1995), *review denied*, 127 Wash.2d 1020 (1995)).

In opposing summary judgment, Drammeh presented sufficient evidence to demonstrate that the specific acts which resulted in Ceesay's death were reasonably foreseeable to Uber.  Drammeh provided evidence that Uber had knowledge that riders were committing violent assaults and carjackings against drivers.  Here, the "specific acts in question," *McKown*, 182 Wash.2d at 767, were an attempted carjacking and a violent assault against Ceesay by riders with whom

---

*H.B.H.*, 192 Wash.2d at 176–77 (cleaned up).  We hold that an assault and attempted carjacking by rideshare riders on a rideshare driver is not a legally unforeseeable harm.  The question of whether these specific riders' assault on Ceesay was within the general field of danger, however, remains a question of fact for the jury.  *See Niece*, 131 Wash.2d at 51 n. 10.

Uber paired him.  The assault ultimately led to his death.  Given Uber's knowledge of assaults at the time, this incident "was not so highly extraordinary or improbable as to be unforeseeable as a matter of law."  *Asphy v. State*, 552 P.3d 325, 340 (Wash. Ct. App. 2024).

The district court thus erred in concluding that the assault on Ceesay was not legally foreseeable.

**3.  *Filing Under Seal.***  The district court also abused its discretion in ordering certain documents to be filed under seal.  We review a district court's decision to file records under seal for abuse of discretion.  *Valley Broad. Co. v. U.S. Dist. Ct. for Dist. of Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986).  A district court abuses its discretion when it does not "articulat[e] both a compelling reason and factual basis" for ordering records sealed.  *United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1195–96. (9th Cir. 2011) (cleaned up).

The district court did not make any factual findings or articulate any reasons supporting its order that certain documents be filed under seal.  This was an abuse of discretion.  *See id.*  We thus remand for the district court to "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret," *id.* at 1195, and offer "compelling reasons and specific factual findings," *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d

1096, 1102 (9th Cir. 1999), for any decision regarding the sealing of documents.

Plaintiffs-Appellants shall recover their costs on appeal.

**REVERSED AND REMANDED for further proceedings consistent with this disposition.**

FILED

AUG 30 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Amie Drammeh v. Uber Techs., Inc.*, 22-36038
BUMATAY, Circuit Judge, dissenting:

I think we failed to take the hint here.  After the district court issued a thorough and well-reasoned decision granting summary judgment to Uber based on the lack of a "special relationship," we certified the question to the Washington Supreme Court.  The Washington Supreme Court rejected our request for certification.  The obvious reason—Washington law does not create a "special relationship" for a rideshare company to protect its drivers from the criminal conduct of passengers.  That's clear from Washington courts' repeated "reject[ion of the] invitation to broaden the common law ["special relationship"] duty.  *See Barlow v. State*, 540 P.3d 783, 788 (Wash. 2024).  Yet we fashion a new expansive tort liability here with broad-ranging consequences for rideshare companies in particular and the "gig economy" in general.  All this, despite recent Washington state law that "preempts the field of regulating transportation network companies and drivers." Rev. Code. Wash. § 46.72B.190(1).  Even so, somehow the majority sees no value at looking at how the Washington Legislature has regulated (or not regulated) the precise industry in question here.  But under Washington law, "a significant expansion of [tort] liability should be left to the consideration of the Legislature" if "[c]urrent Washington law does not support the [proposed] liability theory." *Niece* v. *Elmview Grp. Home*, 131 Wash. 2d 39, 52, 59 (Wash. 1997).  So we should have taken the

1

hint and left this in the hands of the Washington Legislature.  At the very least, we should have deferred to the Washington courts' clear direction.

While the events that took place here are tragic, because Washington law doesn't extend so far as to establish a duty on rideshare companies to protect drivers from the criminal acts of passengers, I respectfully dissent.

## I.

To sustain the negligence claim here, Amie Drammeh, as the executor of Cherno Cessay's estate, must prove that Uber had a duty to protect its drivers from the foreseeable criminal acts of a third party.  Absent the narrow exception for a "special relationship" or "misfeasance," under Washington law, "people and businesses have no duty to aid or protect others from harm."  *Barlow*, 540 P.3d at 786.  As the majority does not upset the district court's misfeasance analysis, I focus on whether (1) Uber has a "special relationship" with its drivers, and (2) whether the carjacking and murder of an Uber driver in Washington State was reasonably foreseeable to give rise to a duty of care.

## A.

### No Special Relationship

Under Washington law, no "special relationship" is formed unless the plaintiff is "helpless, totally dependent, or under the complete control of someone else for decisions relating to their safety."  *Id.* at 788; *see also Turner v. Wash. State Dep't of*

2

*Soc. & Health Servs.*, 493 P.3d 117, 125 (Wash. 2021) (concluding no special relationship when the department "did not have complete control over the living options nor did it make the ultimate decision" regarding the recipient's living situation); *Lauritzen v. Lauritzen*, 874 P.2d 861, 866 (Wash. 1994) (holding no special relationship between a driver and his passenger because the driver lacked the "control over access to the premises that [the person with a special duty] was obliged to protect").

No special relationship exists between Uber and its drivers. Uber retains little control over its drivers' day-to-day work. *See* Rev. Code Wash. § 49.46.300(1)(i)(i)–(iv) (describing independence of rideshare drivers); *see also Folsom v. Burger King*, 958 P.2d 301, 309 (Wash. 1998) (holding no duty between a franchisor and the murdered employees of the franchise because the franchisor did not retain control over their "daily operation[s]"). Though Uber may decide which customers drivers are matched with, drivers retain control over the daily operation of their jobs. Drivers often use their own personal vehicles and are required to maintain their cars' safety measures. Drivers choose the time when they work, they choose the location where they conduct their business, and, ultimately, they exercise a choice in picking up a passenger. So an Uber driver can reject a passenger—*any* time for *any* reason. *See* Rev. Code Wash. § 49.46.300(1)(i)(ii) ("The transportation network company may not terminate the contract of the driver for not accepting a specific

3

transportation service request[.]"). Nothing in their relationship with Uber prevents drivers from taking charge of their own safety. Thus, this relationship "lacks the traits of dependence and control" of safety considerations necessary to establish a "special relationship." *Barlow*, 540 P.3d at 788.

And Uber has no physical custody or control over its drivers—a common hallmark of a "special relationship." *See HBH v. State*, 429 P.3d 484, 494 (Wash. 2018). In cases accepting a special relationship outside the physical-custody-and-control setting, Washington law requires the defendant to assume responsibility for the safety of a "vulnerable victim." *Id.* (including examples of foster children and children in the custody and care of a church). Without this "entrustment for the protection of a vulnerable victim," no special relationship is created. *Id.* Uber drivers are nothing like the foster children considered "vulnerable victims." They are adults who enter an arm's-length contract with Uber to earn a living.

The majority's massive expansion of tort liability will have rippling effects across Washington's economy. Under the majority's theory, anytime a rideshare company (or any other "gig economy" company) fails to ensure the safety of its independent contractors, it may be on the hook if the company has any amount of control over the contractor's tasks. Indeed, if merely matching a driver to a passenger is enough to create a special relationship, then there's nothing "special" about it.

Based on clear Washington law, we should have found no special relationship here.

## B.

## No Foreseeable Harm

The murder and attempted carjacking of Ceesay was also unforeseeable and so doesn't create a duty for Uber.  Washington law requires "notice of criminal activity sufficient to give rise to a duty" to protect.  *McKown v. Simon Prop. Grp., Inc.*, 344 P.3d 661, 665 (Wash. 2015).  "[I]f the criminal act that injures the plaintiff is not sufficiently similar in nature and location to the prior act(s) of violence, sufficiently close in time to the act in question, and sufficiently numerous, then the act is likely unforeseeable as a matter of law under the prior similar incidents test." *Id.* at 669.

Uber had no notice of criminal activity like what occurred here.  No evidence shows a dangerous propensity of Uber passengers using a fake account with an anonymous payment method to carjack and then murder Uber drivers in Issaquah, Washington—where Ceesay was murdered.  See *Tortes v. King Cnty.*, 84 P.3d 252, 255 (Wash. 2003) (criminal acts were unforeseeable because there was "no evidence that Metro knew of the excessively dangerous propensities of [the attacker] and evidence does not support the fact that there were similar crimes on other Metro buses, only that simple assaults had occurred").  So no evidence supports the

proposition that, any time a passenger created an Uber profile and used a gift card for payment, Uber was on notice of pending criminal mischief sufficient to form a duty to protect.

And under Washington law, even if statistical evidence showed a general increase in carjackings in other parts of the country or the world, this general crime rate data does not support that the carjacking in Washington State was foreseeable. *See Kim v. Budget Rent A Car Sys., Inc.*, 84 P.3d 252, 255 (Wash. 2001) (rejecting "utilization of high crime rates as a basis for imposing a tort duty").

Given the unforeseeability of Ceesay's tragic murder, Uber had no duty to protect against it.

## II.

On the sealing of Uber's discovery, Uber has shown that the documents at issue involve sensitive or proprietary information. And the district court accepted Uber's reasons as "good cause" for a protective order. This isn't enough to find an abuse of discretion. So I would affirm across the board.

I respectfully dissent.